# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOENATHAN STEVENSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 13 C 138 |
| | ) |
| FEDEX GROUND PACKAGE SYSTEM, | ) Judge John J. Tharp, Jr. |
| INC., a Delaware corporation, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This retaliatory discharge action presents the question of whether under Illinois law an employer may impose an advance notification requirement on employees who seek medical treatment following a workplace injury. Plaintiff Joenathan Stevenson alleges that his former employer FedEx Ground Package System, Incorporated ("FedEx") unlawfully terminated his employment in retaliation for asserting his rights under the Illinois Workers' Compensation Act, 820 ILCS 305 ("IWCA"), after he obtained medical treatment without first notifying the company. The Court concludes that IWCA does not permit employers to impose such a requirement and, accordingly, grants Stevenson's motion for judgment on the pleadings and denies FedEx's motion for summary judgment.

## BACKGROUND

Although the parties dispute some of the details, there is no dispute about the basic facts necessary to address the legal issue presented in the parties' competing motions. Defendant FedEx employed Plaintiff Joenathan Stevenson as a package handler from February 2007 to January 2011. As of January 2011, Stevenson was subject to a FedEx company policy that required immediate reporting of workplace injuries whether they required only minor first aid or

1

professional medical treatment.[1] In addition, FedEx policy required that employees wishing to seek professional medical treatment for a workplace injury first attempt to provide advance notice to management. Under this company policy, failure to notify management before seeking professional medical care could subject the employee to termination.

On January 6, 2011, Stevenson reported to supervisors that he was suffering from a sore back. FedEx generated a First Aid/Injury Report and placed Stevenson on light duty to accommodate his condition. He did not request or seek medical treatment at that time. After working light duty on January 7, 8, 10, 11, and 12, Stevenson sought medical treatment for his back on the morning of January 13. The physician assistant ("PA") who examined him provided a "Certificate to Return to Work," which cleared Stevenson to return to work on January 14 and also stated: "Please keep patient on light duty/off truck work until he can have a functional capacity eval done with physical therapy to see exactly what his limitations are." Stevenson began his next shift, as previously scheduled, at 10:30 p.m. on January 13 and worked until about 7:00 a.m., and worked light duty (as FedEx had not yet returned him to regular duty). At the end of his shift, Stevenson presented the note from the PA, thereby notifying FedEx that he had already sought and received medical care for the January 6 incident. Citing the company policy that required advance notice *before* seeking medical treatment for a prior workplace injury, FedEx terminated Stevenson's employment.

Stevenson then brought a retaliatory discharge action, under Illinois law, in the Circuit Court of Cook County, Illinois. On January 8, 2013, FedEx removed this action to this Court and

---

[1] FedEx distinguishes between "first aids," which do not require professional medical attention, and "injuries," which require professional medical attention. This distinction is not material for the purpose of deciding these motions however; for simplicity, this Opinion uses the term "injury" to describe the lower back problem that led Stevenson to seek medical treatment.

Stevenson did not contest removal. Diversity exists because Stevenson is a citizen of Illinois, and FedEx is a Delaware corporation whose principal place of business is in Pennsylvania. Further, the Court cannot say that there is no basis under which the amount in controversy here would not exceed the jurisdictional minimum. *See, e.g.*, *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006). The plaintiff's state law complaint sought damages "in excess of $50,000," accrued damages for several years following a termination of employment could exceed the jurisdictional minimum, and each of the parties asserts a good faith belief that the amount in controversy in this case exceeds $75,000.

## DISCUSSION

Under Illinois law, it is unlawful for an employer to terminate an employee in retaliation for exercising a right guaranteed by the Illinois Workers' Compensation Act, 820 ILCS 305 ("IWCA"). *See* 820 ILCS 305/4(h) (prohibiting employers from interfering with an employee's exercise of IWCA rights or from discharging employees because of the exercise of IWCA rights); *Kelsay v. Motorola*, 74 Ill. 2d 172, 185, 384 N.E.2d 353, 358–59 (Ill. 1978) (establishing a private cause of action for retaliatory discharge of an employee who files a Workers' Compensation claim); *Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill. 2d 526, 533, 519 N.E.2d 909, 913 (Ill. 1988) (clarifying that the retaliatory discharge tort also applies to seeking medical care under IWCA, not just to the filing of a Workers' Compensation claim). This is an exception to the general rule in Illinois that employers may terminate at-will employees for any or no reason. *Kelsay*, 74 Ill.2d at 181, 384 N.E.2d at 357. For claims alleging retaliatory discharge for the exercise of IWCA rights, the plaintiff employee must prove (1) his status as an employee of the defendant; (2) his exercise of a right granted by IWCA, and (3) a causal relationship between his discharge and the exercise of that right. *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 773 (7th Cir. 2012) (citing *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 149

3

(7th Cir. 1994)); *see also Clemons v. Mechanical Devices Co.*, 184 Ill. 2d 328, 336, 704 N.E.2d 403, 406 (Ill. 1998) (stating the same three-element test for contexts where the IWCA right asserted is the right to file a Workers' Compensation claim).[2]

In this case, the parties agree that Stevenson was a FedEx employee and that a causal relationship exists between Stevenson's actions and Stevenson's termination. They simply disagree about whether all of his actions were protected. FedEx concedes that IWCA protects Stevenson's actions in seeking medical care from his own provider and in later filing a Workers' Compensation claim,[3] but contends that the sole cause of his termination was not the fact that he sought medical treatment but rather his failure to notify the company before he did so. Def.'s Mem., Dkt. 40, at 2. Stevenson does not dispute the cause of his termination: "Plaintiff admits he was terminated on January 17, 2011, for failing to notify his supervisors or management prior to seeking medical attention for a work injury." Pl.'s Resp. to Def.'s SOF, Dkt. 41 ¶ 33.[4] The only

---

[2] "In *Clemons v. Mechanical Devices Co.*, 184 Ill. 2d 328, 235 Ill. Dec. 54, 704 N.E.2d 403, 407–08 (1998), the Supreme Court of Illinois rejected the *McDonnell Douglas* framework for cases of retaliatory discharge for making a workers' compensation claim. It did so because it was unwilling to expand the tort of retaliatory discharge by reducing plaintiff's burden of proving the elements of the tort, one of which is that the workers' compensation claim (or potential claim) was the cause of the plaintiff's being fired." *Gacek v. American Airlines, Inc.*, 614 F.3d 298, 300 (7th Cir. 2010).

[3] Although not referenced in the pleadings, that Stevenson filed a Workers' Compensation claim is a matter of public record and is not in dispute between the parties. *See United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991) (affirming the district court's decision to take judicial notice of a prior bankruptcy proceeding between the parties while deciding a motion for judgment on the pleadings).

[4] In its briefs, FedEx repeatedly mischaracterizes the plaintiff's argument as asserting that his termination was based solely on the fact that he sought medical treatment, ignoring the plaintiff's repeated statements that "Defendant unlawfully . . . interfered with Plaintiff's rights by requiring him to notify his supervisor prior to seeking medical attention for a work injury." Pl.'s Mem., Dkt. 33, at 5; Pl.'s Reply, Dkt. 48, at 3 ("Plaintiff is relying on the express admission of Defendant that Plaintiff was terminated for failing to notify management prior to seeking medical treatment for a work injury.").

remaining question, then, is whether IWCA grants employees the right to seek medical care for a prior workplace injury without first notifying a supervisor.

Stevenson's argument rests on the fact that IWCA prohibits employers from interfering with an employee's attempt to exercise rights provided in the statute. IWCA provides, in relevant part, that:

> (h) It shall be unlawful for any employer . . . to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her by this Act . . . .
>
> It shall be unlawful for any employer . . . to discharge . . . an employee because of the exercise of his or her rights or remedies granted to him or her by this Act.

820 ILCS 305/4(h). Because one of the rights guaranteed by IWCA is the right to seek medical treatment, *Hinthorn*, 119 Ill. 2d at 534, Stevenson argues that IWCA therefore protects the right of employees to secure one's own medical provider without interference "in any manner whatsoever." *Id.*

In its briefs, FedEx does not dispute the legal premise of Stevenson's argument (that IWCA provides the right to seek medical care without interference).[5] Rather, it presents fact-laden arguments that its advance notification requirement (1) does not interfere with the right of

---

[5] FedEx sensibly does not advance the semantic argument that, because it protects "rights" granted by IWCA, the anti-interference provision could not itself be deemed to be one of the "rights" granted by IWCA. Under that premise, interference would constitute a violation of IWCA, but a termination predicated on interference would not constitute retaliatory discharge since the non-interference is not itself an IWCA right. That argument fails of its own weight; IWCA also expressly prohibits termination in retaliation for exercising IWCA rights, yet, as noted above, Illinois recognizes retaliatory discharge claims for exercising IWCA rights. *See Kelsay*, 74 Ill. 2d at 185, 384 N.E.2d at 358–59 (establishing a private cause of action for retaliatory discharge of an employee who files a Workers' Compensation claim); *Hinthorn*, 119 Ill. 2d at 533, 519 N.E.2d at 913 (retaliatory discharge tort applies to efforts to IWCA right to obtain medical care). Plainly, IWCA's protective provisions do not displace retaliatory discharge claims.

employees to seek medical treatment and (2) is justified by legitimate corporate concerns. Even accepting as true the facts on which these arguments are based, FexEx falls short; the first is unpersuasive; the second, irrelevant.

FedEx contends that its advance notification policy does not interfere with the right to seek medical treatment because the policy expressly advises employees that they may seek medical care from their own choice of provider, and does not deny access to medical care or employer compensation for medical care, because "there is nothing that conditions that choice [to seek medical treatment] on supervisor approval." Def.'s Memo., Dkt. 40, at 2. According to FedEx, the policy does not affect access to, or timing of, treatment, because employees have access to a 24-hour phone line and that even an attempt to make a phone call would satisfy the policy. *Id.*

At best, these contentions establish that the burden imposed on employees by the advance notification requirement can be minor: a quick phone call, leave a message, and you're on your way to the doctor. But it cannot be said that the advance notice requirement imposes no burden at all; it is a precondition that must be satisfied (on penalty of termination) before one can seek medical treatment. Stevenson posits that there may be many ways that the notification requirement might interfere with the right to seek medical treatment: it might "create apprehension" that the employer retains the power to approve or disapprove of medical treatment, and it may cause employees to avoid seeking medical care. Pl.'s Resp., Dkt. 43, at 11. FedEx retorts that these suggestions are speculative, and they are, but that misses the point: by definition, imposing *any* prerequisite an employee must satisfy before seeking medical treatment "interferes" with the employee's right to seek and obtain medical treatment and therefore runs afoul of IWCA. Under the FedEx policy, at a minimum an employee would have to remember

that there is such a policy (or try to find out whether there is such a policy; Stevenson claims that he didn't know of the requirement); review or investigate the specific requirements of the policy; locate the appropriate phone number to call; locate a phone; and place the call, all while in sufficient distress that he or she believed that it was necessary to seek medical treatment. FedEx's protests notwithstanding, these are not wholly insubstantial burdens.

Nowhere in IWCA is there a suggestion that employers may impose minor, or even de minimis, burdens on an employee's right to seek medical treatment. Rather, the unqualified language of the statute states plainly that employers may not interfere "in any manner whatsoever" with an employee's exercise of his rights. 820 ILCS 305/4(h). This unambiguous statutory text compels this Court to conclude that imposing even modest requirements as a *precondition* to seeking medical treatment is "interfere[nce]" within the meaning of section 4(h). *See, e.g.*, *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 876 (2014) ("It is a fundamental canon of statutory construction that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.") (citation and internal quotation marks omitted). To "interfere" is to "come into opposition, as one thing with another, *especially with the effect of hampering action or procedure*." Random House Dictionary of the English Language 993 (2d ed. 1987) (emphasis added). *See also United States v. Willfong,* 274 F.3d 1297, 1301 (9th Cir. 2001) ("to interfere is to oppose, intervene, hinder, or prevent," citing Webster's New World Dictionary 704 (3d College ed. 1998)). By requiring notification before an employee seeks medical treatment, the company policy acts as an obstacle to an employee's ability to seek medical care "at any time." 820 ILCS 305/8(a). Moreover, terminating employees who do not comply with additional restrictions runs afoul of the statutory provision forbidding the discharge of employees for exercising these rights. *See* 820 ILCS 305/4(h).

FedEx raises several examples of workplace policies that have been recognized by the courts as valid defenses to retaliatory discharge claims, Def.'s Reply, Dkt. 47, at 9–11, but those polices are easily distinguished from the policy challenged here; none involves action by an employer that imposed any precondition on an employee's exercise of rights provided by IWCA. In *McCoy v. Maytag Corp.*, 495 F.3d 515 (7th Cir. 2007), the employer terminated an employee who had failed to submit post-treatment status reports during a doctor-ordered leave of absence. *Id.* at 518–19. In *Casanova v. American Airlines, Inc.*, 616 F.3d 695 (7th Cir. 2010), the employer was permitted to engage in post-treatment investigation and surveillance to determine whether an employee had fraudulently claimed a false injury, and could terminate the employee for lying and refusing to cooperate with the investigation. *Id.* at 697; *see also Goode v. American Airlines, Inc.*, 741 F. Supp. 2d 877, 893–94 (N.D. Ill. 2010) (implicitly endorsing the permissibility of a zero-tolerance policy against dishonesty in filing workers' compensation claims). In each of these cases, the violations of company policy occurred *after* the employees had already exercised rights under IWCA and in no way interfered with the employee's ability to obtain medical treatment. In this case, by contrast, Stevenson could not exercise his right to medical treatment without first complying with a policy imposed by the company that required him to take affirmative actions he would not otherwise have need to take. That is plainly "interference"—an act hampering action or procedure.

FedEx also offers several purported justifications for imposing its advance notice policy, but the statute in no way suggests that "justifiable interference" with the employee's right to seek medical treatment is permitted, and FedEx identifies no authority for that proposition. In any event, FedEx's purported justifications are not compelling. FedEx relies most heavily on its claim that management needs to be aware of physical limitations of its employees while planning

staffing and scheduling of shifts. Def.'s Mem., Dkt. 40, at 2–3; Def.'s SOF, Dkt. 37 ¶¶ 6–11. But FedEx does not explain how advance notice—as opposed to prompt post-examination notification of any prescribed duty restrictions—would provide supervisors with useful guidance on staffing. Before treatment, there is no way to know what restrictions (if any) might be imposed on an employee's availability or duties, and any staffing plans would still have to accommodate a doctor's prescribed work restrictions after the examination, so the utility of advance notice to facilitate staffing is negligible.[6]

FedEx also maintains that the advance notice policy is needed to ensure that it does not allow employees to perform duties inconsistent with restrictions imposed by medical professionals, highlighting the fact (assumed true for purposes of this discussion) that Stevenson worked a full shift before advising any supervisor that he had a note from the PA who examined him. Def.'s Mem., Dkt. 40, at 3. But again, *advance* notice that an employee was going to obtain treatment would not mitigate this concern; what the employer needs is notice of the results of any medical treatment before the employee returns to work, which are not available *before* the employee seeks the treatment. The company's need to promptly address any workplace condition that may have contributed to an injury lacks force for the same reason; unquestionably, remedying unsafe conditions and practices is a valid concern, but it is a concern addressed directly by FedEx's policy that requires immediate reporting of an injury and FedEx does not dispute that Stevenson complied with that policy provision. Stevenson's subsequent failure to

---

[6] Moreover, these concerns would apply equally to situations in which an employee suffered a non-workplace injury that required medical treatment, yet so far as the record shows, the company imposes no similar advance notification requirement with respect to those injuries. The point is not that IWCA covers non-workplace injuries; rather, it is that the absence of an advance notice requirement with respect to non-workplace injuries makes the proffered staffing justification even more suspect.

provide advance notice that he had decided he needed to see a doctor contributed not a whit to the company's ability to assess whether there was a workplace condition that required attention; any useful information the medical examination might have contributed would have only been available after-the-fact. In short, the company's purported justifications for requiring advance notification that an employee is going to seek medical treatment—as opposed to prompt post-treatment notification—ring hollow.

FedEx correctly states that the Illinois courts apply the retaliatory discharge cause of action only in "extremely limited" circumstances. Def.'s Mem., Dkt. 40, at 5 (citing *Paz v. Commonwealth Edison*, 314 Ill. App. 3d 591, 594, 732 N.E.2d 696, 700–01 (Ill. App. Ct. 2000). It is also true that the Illinois Supreme Court has declined to expand this doctrine to cover other forms of retaliation or to cover defendants other than formal employers. *See, e.g.*, *Buckner v. Atl. Plant Maint., Inc.*, 182 Ill. 2d 12, 22, 694 N.E.2d 565, 570 (Ill. 1998) (limiting the proper defendant in such actions only to the employer itself and not its agents or employees); *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 39, 645 N.E.2d 877, 882 (Ill. 1994) (declining to recognize an analogous doctrine for retaliatory *demotion* against an employee who had not been terminated). Also, the Illinois Supreme Court has exhibited reluctance to expand this cause of action to protect employee interests outside of the Workers' Compensation context. *See Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 508, 568 N.E.2d 870, 876–77 (Ill. 1991) (declining to expand the tort to cover retaliatory discharge of a government employee who purportedly refused to abuse his position to influence the political process); *Barr v. Kelso-Burnett Co.*, 106 Ill. 2d 520, 526–27, 478 N.E.2d 1354, 1356–57 (Ill. 1985) (declining to expand the tort to cover retaliation for engaging in political speech). However, this case falls squarely into the narrow circumstances where the Illinois Supreme Court has already recognized liability

for retaliatory discharge—an employer who discharges an employee for exercising rights protected by IWCA. *Cf. Hinthorn v. Roland's of Bloomington, Inc.*, 519 N.E.2d 909, 912–13, 119 Ill. 2d 526, 530–31, 533 (Ill. 1988) (making "abundantly clear" that the court was not expanding the tort of retaliatory discharge but that the plaintiff had properly alleged all the elements of the tort already recognized in earlier cases, and that the tort covered other IWCA rights beyond just seeking compensation for medical care).

Interpreting IWCA to preclude an employer's imposition of conditions on the exercise of the rights provided by the statute, moreover, is consistent with the Illinois Supreme Court's teaching that employers are not free to act in a way to undermine the purposes of IWCA. *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 182, 384 N.E.2d 353, 357 (Ill. 1978). FedEx's policy effectively narrows the manner and circumstances in which an employee may exercise his IWCA-protected right to seek medical care. Allowing an employer to interpose preconditions on the exercise of a right as to which the Illinois legislature has expressly prohibited employers from interfering "in any manner whatsoever" would seriously undermine "the overriding purpose of the [Workers' Compensation] Act . . . to protect injured employees by ensuring the availability of medical treatment," *Hinthorn*, 119 Ill. 2d at 534, 519 Ill. 2d at 913.

In short, the Court concludes that FedEx's requirement that employees notify the company prior to seeking medical treatment for a workplace injury interferes with the right of employees to seek medical treatment for those injuries. Because Stevenson exercised his right to seek medical attention without employer interference, a right guaranteed by IWCA, and it is undisputed that FedEx terminated Stevenson's employment because of his exercise of that right, the Court concludes that Stevenson's claim for retaliatory discharge has been established as a matter of law.

\* \* \*

For the reasons set forth above, the Plaintiff's motion for judgment on the pleadings is hereby GRANTED and the Defendant's motion for summary judgment is DENIED.

John J. Tharp
United States District Judge

Dated: September 24, 2014